We'll move now to the final case for argument today, A.J. Energy LLC v. Woori America Bank and we have Ms. Kam arguing for the appellant. Good morning, Your Honor. Good morning. First, I wanted to apologize that I wear a headscarf. I have an allergy that made two-thirds of my hair fall out. May it please the court, this appeal is basically about a bank fraud case that was wrongly dismissed by the lower court. There's really only one issue. Should the district court have dismissed our case without prejudice? In the pleading stage at that, defendant filed a 12B motion and in a 12B motion, the court has a duty to see the plaintiff's evidence in the best light. In the motion to dismiss, it was almost treated like a motion for summary judgment and they were acting, the district court was acting as if there was no dispute in the facts. They basically just decided all of our evidence is fraudulent and everything that the defendant submitted was credible. Our clients were, well, defendant's client, Woori Bank, stole $7 billion by our client and that was during two transactions. After the first transaction, the client spent a lot of time in South Korea to fix the situation and to get his money back. They got involved with the Minister of Strategy and Finance, had meetings with officials of Woori Bank. At that time, Woori Bank had a CEO, Lee Kun-gu, who was suspected to be the instigator of the theft. Now, Lee Kun-gu at that time was not with Woori Bank anymore. So everybody confirmed, let's do another deal. You invest $5 billion into the Korean economy and that was to be specifically shipping industry, government bonds, and government approved projects. Finally, they came to an agreement, Deutsche Bank agreed, Maybrook Financial, which is a subsidiary of Deutsche Bank, agreed to provide the funds and they moved forward with the transaction. Now, at that time, Lee Kun-gu was reinstated as CEO and in the second transaction, the same thing happened. Deutsche Bank transferred the money, but Woori Bank never deposited the money in my client's account. Let me just ask you, the district court noted in its decision in terms of concluding that this was implausible on its face and fraudulent. A number of the documents on their face had all sorts of indicia of fraud. Putting aside what Deutsche Bank later put in affidavit noting fraud, but just on the face of the documents, they have the same reference number and transaction number for both of the transactions. You don't have to be a signature expert to see the signatures are completely different of the executive. So can you explain those things? When Sam's looking at every bank in the world, you can tell me, who uses the same transaction number for two transactions a year and a half apart at a bank? If I may, your honor, there's a difference between a transaction ID and a transaction code. The transactions IDs are Deutsche Bank's IDs and are used in every single transaction that Deutsche Bank makes. They never change. The transaction code is transaction specific and that would change. Deutsche Bank says that this is fraudulent. You're saying they're wrong, right? Deutsche Bank does not say anything is fraud. Deutsche Bank has submitted us with the evidence that we provided. They put an affidavit denying the existence of the transfers that are the core of your case. Excuse me, your honor, that is a defendant alleging that all our documents are fraudulent. Because they created confusion between Deutsche Bank New York and Deutsche Bank AG in Germany, Frankfurt. Deutsche Bank New York has no access to the records of Deutsche Bank AG in Frankfurt. They would not know about any transactions that Deutsche Bank Frankfurt does. And this is very easy to verify because you can just walk into Deutsche Bank New York, make an appointment and ask them. And they will tell you we have no access to their transactions. So when we say the suing affidavit is fraudulent, it's a fraudulent affidavit, you're saying they don't know that they're wrong. They are wrong. And curiously, the local judge allowed us to submit a lot of exhibits. When the allegation came, Mr. Sieving's affidavit is fraudulent. And there are several reasons they said they are fraud is fraudulent. For example, red ribbons are missing. They are not. We just couldn't stand with the red ribbons. We would have broken the seal. So when they alleged that the affidavit was fraudulent, I asked the court if they would allow me to resend the affidavit directly from the German court to the Southern District Court of New York. Just at that point, the local judge decided now I'm not going to accept any more new documents. So basically, they deprived us of the right to once and for all get rid of the allegation that the affidavit is fraudulent. Further, we were never given the right to have oral arguments. We could have brought witnesses. We could have brought Mr. Sieving to confirm that this is his signature and that he signed the affidavit. The signatures are different. He has one electronic signature and one hand signature. They appear on all the documents, but we never got a chance to show any of this. Defendants basically tried to confuse the court. In the end, what they said was, the court even said, Mohamed Kava, who they submitted two affidavits from, the district court said Mohamed Kava was working for Deutsche Bank AG in New York. That is in the order. There is no such thing as an AG in the United States. It's translated loosely from German, which means Aktiengesellschaft, and it's translated loosely, it means shareholder association, basically corporation. All right, Ms. Kam, your time is up, but you do have three minutes for rebuttal. Thank you. Thank you. Mr. Gere for Worry Bank. Good morning, Your Honors. May it please the court, Jeffrey Geyer, Skadden Arps, on behalf of Apelli Worry Bank. This is an unusual appeal, to say the least. Plaintiff's claim is, in the words of the district court, a tall tale. Plaintiff has put forth an imagined scenario in which a small Nevada LLC with no discernible business somehow obtained access to 8 billion euro for investment in the Korean economy. That is far-fetched on its own, but that's just the beginning. The tale gets more incredible from there. According to Plaintiff, in 2015, one of its partners obtained access to 3 billion euro, supposedly transferred that to another partner, only to have it stolen outright by Worry Bank. Fast forward another two years, another one of Plaintiff's partners somehow got access to another 5 billion euro, and lo and behold, transferred it in the same exact way, only to have that 5 billion euro stolen by Worry Bank. For a grand total of 8 billion euro stolen. As implausible as all that is on its face, that's only the tip of the iceberg. Diving into the exhibits, as the district court did in great detail, shows inconsistencies galore, reflecting not only that the claim is implausible, but that it is a fabrication. The district court saw through Plaintiff's ruse, issuing an extensive 29-page opinion cataloging in great detail the numerous inconsistencies in the manufactured exhibits, even appending some of the more egregious examples to its opinion. And while the district court resolved the motion to dismiss, purely on the complaint and the exhibits attached thereto, and the district court was very clear about that in the opening paragraphs of its opinion, including in footnote one, when considering the accompanying motion for sanctions, the district court went beyond and considered the additional exhibits that had been filed and evidence that had been filed. Now, limited to the face of the complaint and the reference documents, if you exclude the identity of the number, and you exclude the difference in signatures for the reasons given by your adversary, the contention that the number is not a number of a unique transaction, but a number of Deutsche Bank, and as to the difference in signatures, one was a manual signature and one was a computer signature, excluding those, what are the principal inconsistencies that you rely on that the district court found? What are the most telling inconsistencies in the documentation? Sure, Your Honor. And just to be clear, before we set aside the transaction numbers, the transaction numbers are called unique transaction reference number. That's how the banks identify their transactions. The court, in a footnote, specifically noted that the assertion that those numbers are always the same is implausible on its face, given it's at odds with the plain meaning of the word unique. Indeed, those same numbers are included on three separate transactions, including a transaction involving Wells Fargo that plaintiff now claims it erroneously attached to the original complaint. So you can see those overlapping transaction reference numbers on A47, A71, and SA37. Another very telling example is the inconsistencies in the account numbers. Hestium's account number, according to plaintiffs, sometimes begins with an eight, sometimes it begins with a nine, and the sequence of numbers is the same thereafter. And that same number sometimes also is the account number for Maybrook Financial. And these can be observed on A47, A49, and A61. Turning to the supposed letters from Deutsche Bank that are submitted as exhibits, there is a letter supposedly from Deutsche Bank officers that inexplicably appears on Maybrook letterhead. That document also includes a reference to the officers' SSN, which I believe everyone has considered to be a reference to a Social Security number, a PIN number, and then a zip code, which the district court noted is a zip code associated with New Hampshire. And, of course, the overlapping signatures bear no resemblance to each other, and that's on A71 and A90. There are also numerous other inconsistencies detailed in the district court's opinion, and in our briefing, including in one place on the alleged transaction documents reflecting a 3 billion euro transaction, there's a reference to Warhan, which is an entity that is never again named in any of the papers, and that was the supposed owner of the funds on the agreement that is appended to the complaint. And that can be observed on page A35. There are also various inconsistencies in the date with transactions occurring months apart or references to the transactions occurring months apart. And plaintiff has tried to explain away some of those by indicating that the references are in the Western European date format. However, even on the same page of certain of plaintiff's documents, there are references to, for instance, August 5th and then 5 August and then 8-5. So even on the documents plaintiff has submitted, there's no consistency in how the dates are formatted. So the evidence, I believe, that the district court has carefully cataloged is overwhelming that the complaint is not just implausible, it's, as the court held in Gallup v. Cheney, it's factually frivolous and subject to dismissal. And the court was very clear in detailing that it was referring solely to the complaint and the exhibits in reaching its decision on the 12B6 motion to dismiss. The implausibility, though, was just one of the grounds for the court's dismissal of this complaint with prejudice. Despite finding in detail that the complaint was frivolous and implausible, the court went through each of the factual claims, additionally determining that each claim was legally defective in its own right, which serves as a separate basis for dismissal and affirmance here. For instance, plaintiff alleges misrepresentation, but nowhere in the complaint are there any specifics alleged with respect to the misrepresentation. There's no speaker, there's no recipient, there's no time, there's no date, and there's not even any real substance to the allegations of misrepresentation, which falls far short of the requirements of Rule 9b. As to the negligent misrepresentation claim, that suffers from the additional defect of the absence of any special relationship. New York law is well settled that there's no special relationship between a bank and a depositor. And moreover, as the district court noted, plaintiff doesn't even allege it was the depositor of the funds here, instead alleging the money was deposited in the first instance by Hestium as to the 3B, alleged 3B, and by Maybrook with respect to the alleged 5B. The conversion claim is defective for virtually the same reasons. A bank can't convert funds that are on deposit, and the plaintiff here was not even the alleged depositor of the funds. And the contract claims fail because plaintiff has never identified any contract, let alone the specific provisions identified. So we respectfully submit, in addition to, oh, I'm sorry, your honors, and the unjust enrichment claim, which made a reappearance in the appellate briefing. The district court dismissed the unjust enrichment claim because plaintiff abandoned it, did not submit any response to appellee's motion to dismiss the unjust enrichment claim. The court dismissed it as having been abandoned. The law is well settled that this court ordinarily does not consider claims that were not briefed or argued below. And even if the court were to consider the claim, the unjust enrichment claim is merely duplicative of the other defective claims asserted by plaintiff here. The third basis for dismissal and the basis for the monetary sanctions asserted here, held here by the district court, was the repeated submission of forged documents. And here the court was entitled to and did go beyond the complaint and considered evidence that was submitted outside the four corners of the complaint in the exhibits. Among the things the court considered were three separate affidavits submitted by the Deutsche Bank Anti-Financial Crimes Division. Now plaintiff has tried to make an issue of those affidavits saying Mr. Kaba and Ms. Donovan can't be relied on because they sit in New York. As Ms. Donovan explained in her affidavit, however, Deutsche Bank's Anti-Financial Crimes Unit unsurprisingly operates on an international basis. She alleges or she explains that she spoke with her colleagues in Frankfurt in confirming the falsity of the signatures and in confirming that the transactions never occurred and reaffirmed the contents of each of Mr. Kaba's affidavits where he essentially said the same thing. The other primary thing the district court looked to in determining sanctions were appropriate here is the alleged affidavit from Mr. Suen. On its face, that affidavit is frankly incredible. That a CEO of a major international bank would submit an affidavit littered with formatting and syntax errors is incredible. Ms. Donovan said in her affidavit that the signature on that affidavit is forged. And the apostille allegedly appended to the affidavit is not only facially incomplete. It bears the forged signature of a German judge as confirmed in a letter that our counsel, our colleagues in Frankfurt were able to get in letter format from the Frankfurt Regional Court. So for all those reasons, the district court was well within its discretion in awarding sanctions here, both monetary and dismissing the complaint with prejudice. Thank you, Mr. Geyer. Ms. Kam, you have three minutes for rebuttal. Starting with opposing counsel's statement about social security numbers and zip codes. That simply does not exist in Germany. So you would never find those abbreviations meaning what they mean in America. Secondly, Ms. Donovan, who presented herself as a VP of investigations, according to her own profile, was just an investigative manager. We know from Deutsche Bank she didn't talk to anybody there. And if she had, why would she not have put the name of the person she spoke supposedly at Deutsche Bank in her affidavit? That would make sense. Further, again, going to the transaction ID numbers. Deutsche Bank has two transaction ID numbers, and one is called the ID number. The second one is basically the same as a routing number. It has a different name. The only thing that changes per transaction would be the transaction code. Then further, as I said before, on the alleged forgery of Mr. Sieving's affidavit, we offered the court to have this affidavit sent directly from the German court to the Southern District. This opportunity was denied to us. We never got a chance for a hearing. We never got a chance to present any witnesses because apparently, in this case, we were trying the case in the pleading stage. What about the letter from the German judge saying that that signature was a forgery? What's your response to that? It is not a forgery. The electronic signatures are the same on every of Mr. Sieving's. So the German court is wrong too? Yes. The signature is not a forgery. In addition, this is not an issue that should be dealt with in the pleading stage. This would either be confirmed by Mr. Sieving saying, yes, this is my signature, I signed this document on that day, or the other side should bring an expert witness and prove this is a failure. We know exactly where the records of this theft are to be found, and that's the Central Bank of South Korea. It is overseen by the Federal Reserve, and that's the only place where Worry Bank cannot go in and change the record. So they did everything they could in addition to switching the dates around, because as in Europe, we use the day first, then the month, and then the year. They changed those dates, confused the judge by saying, this cannot have happened because the contract was made after the transaction. When you turn that date around, in the way it is written in Europe, the contract was made about a couple of months before the transaction happened. Right. Ms. Kam, your time is up. Thank you for your argument today. Thank you to both of you. We'll reserve decision.